IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KATHERINE HERRERA                                                                      PLAINTIFF

v.                                             No. 5:16-CV-05102

TIFFANY LOWE, Individually and in her
Official Capacity; CASSANDRA ALLEN,
Individually and in her Official Capacity;
MATTHEW MCHUGH, Individually and
in his Official Capacity; BENTON COUNTY,
ARKANSAS; BENTON COUNTY SHERIFF,
KELLY CRADDUCK, Individually and in his
Official Capacity                                                                      DEFENDANTS

## OPINION AND ORDER

Before the Court is Defendants' motion for summary judgment (Doc. 24), Plaintiff's

response (Doc. 30), Defendants' reply (Doc. 32), and the parties' supporting documents. For the

reasons set forth below, Defendants' motion will be granted and judgment will be entered in their

favor.

I.      **Background**

Plaintiff Katherine Herrera was arrested and taken to the Benton County Jail on September

22, 2013 at approximately 2:00am for domestic battery charges which were later dropped. During

the intake process, Separate Defendants Tiffany Lowe and Cassandra Allen were having difficulty

removing jewelry from Ms. Herrera's hands. Separate Defendant Matthew McHugh then arrived

at the intake stall to assist Deputies Lowe and Allen in the jewelry removal. The parties dispute

whether or not Ms. Herrera then kicked at one of the deputies, but it is undisputed that Officer

McHugh performed a take-down on Plaintiff and placed her on the ground. He immobilized her

once on the floor, and Deputies Lowe and Allen then removed the remainder of Ms. Herrera's

jewelry. While she was still on the ground and on her stomach, the three spun Ms. Herrera's legs

towards the closest holding cell and pulled her into the cell.  The jail nurse tended to Ms. Herrera, and she was later transported to the hospital.  Ms. Herrera was released on bond later that day. Afterwards, Ms. Herrera was charged with assault for the events that transpired during intake, but she pled no contest to disorderly conduct and was convicted of that charge.[1]

Ms. Herrera claims that the take-down caused her to lose consciousness, and that she suffered injuries to her face, neck, hands, and knee.  She filed the immediate lawsuit seeking relief under 42 U.S.C. § 1983 for alleged violations of her Fourth, Eighth, and Fourteenth Amendment rights.  She claims that former Sheriff Kelly Cradduck should be held liable for the alleged constitutional violations because he failed to train and supervise the officers.  Finally, she asserts a state law claim for intentional infliction of emotional distress based on the alleged unconstitutional conduct.  Defendants filed this motion for summary judgment arguing that they are entitled to qualified immunity on the individual capacity claims and that there is no official capacity liability due to a lack of proof.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of demonstrating there are no genuine issues of material fact.  *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). In considering summary judgment motions, the Court must "review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party."  *Id*.  "In resisting the motion for summary judgment, the nonmoving party must

---

[1] The Arkansas Supreme Court "has consistently treated convictions based on nolo contendere pleas as convictions."  *Pryor v. State*, 861 S.W.2d 544, 547 (Ark. 1993).

produce 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Minnihan v. Mediacom Comm's Corp.*, 779 F.3d 803, 809 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Where possible, on a motion for summary judgment, the Court relies "on evidence from a videotape of the incident..." *Meehan v. Thompson*, 763 F.3d 936, 938 (8th Cir. 2014) (citing *Scott v. Harris,* 550 U.S. 372, 380–81 (2007)). As such, where one party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," there is no genuine dispute as to that fact. *Scott*, 550 U.S. at 380 (admonishing the Eleventh Circuit Court of Appeals for adopting a version of facts clearly contradicted by a videotape of the event).

### III.    Discussion

Ms. Herrera argues that the officers' actions amounted to excessive force, cruel and unusual punishment, and "activity which shocks the conscience of a civilized society." (Doc. 9, ¶ 23). Defendants argue that for the individual capacity claims against them rooted in the § 1983 cause of action, they are entitled to qualified immunity. Qualified immunity is immunity from suit, rather than merely a defense to liability. *Mallak v. City of Baxter*, 823 F.3d 441, 445 (8th Cir. 2016). It "shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016) (citing *Mallak*, 823 F.3d at 445). Summary judgment on the issue of qualified immunity is inappropriate where a genuine dispute exists concerning predicate facts material to that issue. *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000). Where there is no genuine dispute concerning the predicate facts, then as a matter of law the Court must decide, in light of the surrounding circumstances, whether the conduct at issue was reasonable under settled law. *Id.* In resolving the issue of whether an officer is shielded by

3

qualified immunity, the court must decide whether the facts the plaintiff has shown make out a violation of a constitutional right, and if so, whether the right was clearly established at the time of the officer's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Either of the prongs of this analysis, known as the *Saucier* protocol, may be conducted first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Because the analysis under the first prong is also an analysis of whether summary judgment is appropriate on the merits, the Court will begin with it.

Under the first prong of the *Saucier* protocol, Ms. Herrera must show facts that amount to a violation of a constitutional right. Ms. Herrera first provides that Defendants' actions amounted to an unconstitutional use of excessive force. When excessive force claims arise out of an incident involving a post-arrest detainee who has not yet completed the booking process, the Fourth Amendment's "objective reasonableness" standard applies.[2] *Davis v. White*, 794 F.3d 1008, 1011 (8th Cir. 2015). That is, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, --U.S.--, 135 S.Ct. 2466, 2473 (2015). This standard requires an analysis of the particular facts and circumstances of the case, from the perspective of a reasonable officer on the scene, knowing what the officer knew at that time. *Id*. The Court's considerations include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue;

---

[2] Ms. Herrera's Eighth Amendment claims fail on these grounds because she was a post-arrest detainee who had not yet completed the booking process. *See Graham v. Connor*, 490 U.S. 386, 393 (U.S. 1989) (The Eighth Amendment's prohibition of "cruel and unusual punishments" applies only "after conviction and sentence." (citing *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40 (1977)). A post-arrest detainee is not a convicted prisoner and has no rights under the Eighth Amendment. Rather, a detainee's rights arise under the Due Process Clause of the Fourteenth Amendment. *See City of Revere v. Massachusetts Gen. Hosp*., 463 U.S. 239, 244 (1983).

the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."
*Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

It is clear from the video of the exchange that Ms. Herrera did indeed attempt to kick one of the female deputies right before Officer McHugh performed a take-down of her, and no reasonable jury would believe her claims that she did not. Officer McHugh's response was immediate while Ms. Herrera left leg was still in the air. Once Plaintiff was on the floor, Officer McHugh basically sat on Ms. Herrera with his left leg in a bent position while the female deputies removed the remaining jewelry from her hands. He then stood up and the three officers spun Ms. Herrera's legs towards the closest holding cell—which appears to have been only a few feet away—and pulled her into the cell before having her examined by the nurse. Plaintiff claims that the take-down knocked her unconscious and that she suffered several injuries, but she has offered no evidence of damages apart from her own deposition testimony.[3] No reasonable juror could conclude that Officer McHugh used an objectively unreasonable amount of force either in taking Ms. Herrera to the floor following the threat imposed by her kick or in subsequently restraining her by applying pressure with his left leg while the remaining jewelry was removed. Thus, the Court determines that Officer McHugh did not use excessive force. The video also confirms that the actions taken by Deputies Lowe and Allen in removing Plaintiff's jewelry do not amount to excessive force.[4] Similarly, the officers' actions in pulling Ms. Herrera to the closest cell were a

---

[3] This provides an additional basis for finding in favor of Defendants on Ms. Herrera's claim for damages.

[4] Plaintiff's response brief raises, for the first time, an argument that even if Deputies Lowe and Allen "were non-participating officers, they would have a duty to intervene." (Doc. 31, p. 7). The Court notes that "[a] party cannot assert a new theory of his case in defending a summary judgment motion or expand a claim to create a material issue of fact where none existed before." *Woods v. Wills*, 400 F. Supp. 2d 1145, 1184 (E.D. Mo. 2005). However, because the Court finds that Officer McHugh's actions were reasonable, it need not address Plaintiff's argument that the female deputies had a duty to intervene.

justified safety precaution and did not amount to excessive force.

As a result of the Court's determination that no reasonable juror could find that Separate Defendants McHugh, Lowe, and Allen acted unreasonably, it additionally believes that their conduct does not "shock the conscience." Plaintiff was not compliant, and the officers had no reasonable expectation that she would comply with verbal commands once she resisted the removal of jewelry from her person and kicked at the officers who were performing their duties in removing jewelry from an inmate as part of the booking process. Therefore, the Court finds that Plaintiff has not shown that the three officers deprived Ms. Herrera of her constitutional rights, and there can be no liability against them for the § 1983 claim.

Former Sheriff Cradduck is entitled to judgment on the claim that he failed to train and/or supervise the officers. "'Because vicarious liability is inapplicable to… § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Id*. (quotation omitted). Ms. Herrera does not allege that Sheriff Cradduck was directly involved in the unconstitutional events, but that he failed to train and/or supervise the officers at issue. However, because the Court finds that Ms. Herrera has not shown that the officers directly involved violated her constitutional rights, Sheriff Cradduck cannot be held liable under § 1983. Similarly, there can be no official capacity liability against Benton County, Arkansas in the absence of proof of a constitutional violation.

Finally, Defendants are entitled to summary judgment on the claim for intentional infliction

of emotional distress because no reasonable juror could conclude that their conduct arose to the high standard for establishing liability.  *See M. B. M. Co. v. Counce*, 596 S.W.2d 681, 687 (Ark. 1980) (For liability to attach, the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."); *see also* Howard W. Brill, *Arkansas Law of Damages* § 33.13 (2016) (noting that only in ten cases since 1980 has the reported history ended in damages being awarded for this claim).

## IV.     Conclusion

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (Doc. 24) is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

Judgment will be entered accordingly.

IT IS SO ORDERED this 16th day of May, 2017.

*/s/ P. K. Holmes,* III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE